485 S.E.2d 12

**Keith SHAFFER, Administrator of the Estate of Keith Shaffer, II, Deceased, and Keith Shaffer, Individually, Thomas G. Wilson, Plaintiffs Below, Appellants**

v.

**CHARLESTON AREA MEDICAL CENTER, INC., a West Virginia Corporation, Arvind Z. Virandia, M.D., and Brigette Joseph, M.D., Crystal Hawkins Castleberry, Defendants Below, Appellees.**

No. 23419.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 22, 1997.

Decided March 19, 1997.

---

430

Barbara H. Allen, Allen & Allen, L.C., Charleston, for Appellant Thomas G. Wilson.

David K. Hendrickson, Thomas L. Hawker, Hendrickson & Long, Charleston, for Appellee Crystal Hawkins Castleberry.

McHUGH, Justice:

The plaintiff below and appellant herein, Thomas G. Wilson, (hereinafter referred to as "Wilson"), appeals the January 23, 1995, order of the Honorable Judge Lyne Ranson of the Circuit Court of Kanawha County which granted a motion by the defendant/ap-

pellee, Crystal Hawkins Castleberry, (hereinafter referred to as Castleberry), to quash a charging lien filed by Wilson.[1] Wilson contends on appeal that it was reversible error for the circuit court to restrict his ability to recover in this case under the theory of quantum meruit.

## I.

### FACTUAL BACKGROUND

The facts of this case reveal that Wilson and Castleberry are both practicing attorneys in the State of West Virginia. In October of 1991, Wilson and Castleberry entered into an office sharing arrangement and an oral fee sharing agreement in certain cases on which each worked. In the fall of 1992, Keith Shaffer became a client of both parties. The parties executed a contingency fee contract with Shaffer, as his attorneys in a medical malpractice wrongful death claim. The contingency fee agreement gave the attorneys 40% of any recovery, plus expenses. The parties orally agreed to share equally in any recovery. It was agreed between the parties that Castleberry would be the lead attorney in the Shaffer matter.

In March of 1993, the parties filed the underlying medical malpractice wrongful death action. On or about August 10, 1994, Castleberry left Wilson's office and terminated their office sharing arrangement. Shaffer entered into a separate agreement with Castleberry as his attorney on August 13, 1994, under essentially the same terms as that obtained in the initial contingency fee agreement. Shaffer subsequently terminated the contract he had with Wilson on August 14, 1994.

On September 23, 1994, Wilson filed notice of a charging lien in the underlying civil action that was taken by Castleberry.[2] The charging lien sought to recover Wilson's alleged share of any attorney's fees received in the underlying civil action. Castleberry settled the underlying civil action for $550,000 on November 7, 1994. Castleberry's fee for legal services in the underlying civil action was $220,000. On December 2, 1994, Castleberry filed a motion to quash the charging lien. On January 4, 1995, the circuit court convened a hearing on Castleberry's motion to quash the charging lien. Subsequent to the hearing the circuit court entered an order on January 23, 1995, quashing the lien, on the grounds that Wilson "has not demonstrated the reasonable value of his services as required for quantum meruit determination." This appeal followed. Wilson contends in this appeal that it was reversible error for the circuit court to restrict his ability to recover in this case to that of quantum meruit.

## II.

### STANDARD OF REVIEW

For reasons that are explained in section A of part III of this opinion, we are treating the circuit court's ruling in this case as an order granting summary judgment. "A circuit court's entry of summary judgment is reviewed de novo." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). *See also* syl. pt. 1, *Davis v. Foley*, 193 W.Va. 595, 457 S.E.2d 532 (1995); syl. pt. 1, *Jones v. Wesbanco Bank Parkersburg*, 194 W.Va. 381, 460 S.E.2d 627 (1995). This Court has consistently held that " '[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syl. pt. 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992). Our holding in syllabus point 5 of

1. The caption of this case recites the original parties in the underlying civil action. Mr. Wilson in the instant matter filed his charging lien during the litigation of the underlying civil action. The original parties in the underlying civil action are not represented in this appeal and their rights are not affected by the instant matter.

2. Wilson also filed a separate lawsuit against Castleberry, in an attempt to recover monies allegedly owed to him by her with respect to other matters. This second case, *Wilson v. Castleberry*, Civil Action No. 95–C–22, is pending in the Circuit Court of Kanawha County before the Honorable Judge Paul Zakaib.

*Jividen v. Law*, 194 W.Va. 705, 461 S.E.2d 451(1995) held:

> Roughly stated, a 'genuine issue' for purposes of West Virginia Rule of Civil Procedure 56(c) is simply one half of a trialworthy issue, and a genuine issue does not arise unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict for that party. The opposing half of a trialworthy issue is present where the non-moving party can point to one or more disputed 'material' facts. A material fact is one that has the capacity to sway the outcome of the litigation under the applicable law.

With the latter legal principles in view, we turn to the merits of this appeal.

## III.

## DISCUSSION

This Court observed in *Capehart v. Church*, 136 W.Va. 929, 933, 69 S.E.2d 127, 129 (1952) that:

> It is well established that an attorney has a lien on the fruits of litigation to aid in the enforcement of a demand for his fee by resort to the property or money he has recovered for his client. Such liens may be classed as retaining liens and charging liens. 'A retaining lien is the right of the attorney to retain possession of a client's documents, money, or other property which comes into the hands of the attorney professionally, until a general balance due him for professional services is paid.' 7 C.J.S., Attorney and Client, Section 210. 'A charging lien is the equitable right of an attorney to have fees and costs due him for services in a particular suit secured by the judgment or recovery in such suit, is based on equitable considerations, and differs from ordinary liens in that possession is not essential to the charging lien.' 7 C.J.S., Attorney and Client, Section 211.

(Citations omitted.)

This Court has applied the law, with reference to charging liens, in several cases. *See* *May v. Seibert*, 164 W.Va. 673, 264 S.E.2d 643 (1980) (a lawyer who without justification or good cause withdraws from representation may, if his withdrawal works no prejudice to his client, be entitled to all or part of his compensation); *Capehart, supra*, (an attorney's lien for professional services may not be enforced in equity against a stranger to the litigation in which such services were rendered); *In re Marcum*, 135 W.Va. 126, 62 S.E.2d 705 (1950) (an attorney has no lien upon money received by him from a client for a special purpose). Our cases reveal that typically an attorney's charging lien will be brought during the underlying civil action and against the client or former client.[3] *See Robertson v. Pettery*, 114 W.Va. 78, 170 S.E. 901 (1933); *Fisher v. Mylius*, 62 W.Va. 19, 57 S.E. 276 (1907). However, there are situations where a charging lien is brought against another attorney, who took over the underlying claim. This type of charging lien, against a subsequent attorney, is typically instituted in a separate action against the attorney. *See Kopelman and Associates, L.C. v. Collins*, 196 W.Va. 489, 473 S.E.2d 910 (1996). In the proceeding now before us, Wilson brought his charging lien against Castleberry during litigation of the underlying action. *See Tuinei v. City and County of Honolulu*, 2 Haw.App. 574, 636 P.2d 1363, 1365 (1981) (where it was said that "in the interests of judicial economy and efficiency, it appears reasonable to have the fee dispute settled in the case in which it arose ... particularly where ... it is not holding up distribution of the settlement monies of the litigants."). Wilson's decision to bring his charging lien against Castleberry in the underlying civil action has posed several procedural problems. Therefore, before addressing the merits of the charging lien, we must unravel the procedural posture of this case.

### A.

### *Procedural Posture*

Wilson initiated this case by filing a notice of a charging lien in the underlying civil

---

**3.** This type of lien is specifically provided for under *W. Va.Code*, 30–2–15 [1923] which states: "An attorney shall be entitled for his services as to such sums as he may contract for with the party for whom the service is rendered; and, in the absence of such contract, he may recover what his services were reasonably worth."

action. Castleberry responded initially by filing a motion to quash the charging lien.[4] A hearing was held and the circuit court subsequently entered an order quashing the charging lien. To properly address the issues herein we must put "labels" on the documents filed and on the procedural steps of this case. This Court pointed out in *Kopelman*, 196 W.Va. at 494 n. 6, 473 S.E.2d at 915 n. 6, that " '[w]e are not bound by the label[s] employed below, and will treat [matters] made pursuant to' the most appropriate rule." (*quoting Murphy v. Smallridge*, 196 W.Va. 35, 36 n. 4, 468 S.E.2d 167, 168 n. 4 (1996)).

■ We will treat Wilson's notice of a charging lien in this matter as a complaint. Castleberry's motion to quash the charging lien will be considered by this Court as a motion under Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure*. Rule 12(b)(6) permits a party to file a motion in the circuit court, prior to filing an answer, to dismiss a claim for failure to state a cause of action. In this case a hearing was held on Castleberry's motion. Where matters heard on a 12(b)(6) motion do not extend outside the pleading, our standard of review from an order dismissing a claim under Rule 12(b)(6) is de novo. *Kopelman*, 196 W.Va. at 492–93, 473 S.E.2d at 913–14. However, it is provided under Rule 12(b) that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]" Our standard of review under summary judgment is also de novo. Syl. pt. 1, *Painter, supra*. The record in this case clearly illustrates that the circuit court received evidence outside the pleading, in the form of witness and expert witness testimony, as well as documentary evidence. Therefore, we will treat the motion as one for summary judgment. We shall further consider the order as one which granted summary judgment pursuant to Rule 56 and the appeal from that order will be treated as such.

In *Kopelman*, 196 W.Va. at 494, 473 S.E.2d at 915 we pointed out the significance of having a motion converted to a summary judgment proceeding:[5]

'As soon as a motion [to dismiss] is converted into a motion for summary judgment, the requirements of Rule 56 become operable. It is important that the court give the parties notice of the changed status of the motion and a "reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In this way no one will be taken by surprise by the conversion. However, there is authority for the notion that the absence of formal notice will be excused when it is harmless or the parties were otherwise apprised of the conversion. Once the proceeding becomes one for summary judgment, the moving party's burden changes and he [or she] is obliged to demonstrate that there exists no genuine issue as to any material fact and that he [or she] is entitled to a judgment as a matter of law.'

(*quoting* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 at 501–06 (2d ed.1990)).

We also said in *Kopelman* "that to treat a motion [to dismiss] on the pleadings as a motion for summary judgment without permitting the adverse party a reasonable opportunity to submit pertinent material is error." *Id.*, 196 W.Va. at 494, 473 S.E.2d at 915. The question remains whether the circuit court complied with the requirements of Rule 56 when the motion was granted.

### B.

#### *Recovery Under Quantum Meruit*

Wilson's ability to recover his alleged attorney fees hinged upon one of two theories:(1) quantum meruit or (2) an oral agree-

---

**4.** The record shows that after the hearing in this matter Castleberry filed a notice of a bona fide defense on January 25, 1995, one day before the circuit court filed its order quashing the lien.

**5.** *Kopelman* dealt with a motion under Rule 12(c) that was converted to a summary judgment proceeding. We noted in *Kopelman* that the procedural mechanisms attendant to a Rule 12(b)(6) and 12(c) motion are the same. *Id.*, 196 W.Va. at 492–93, 473 S.E.2d at 913–14.

ment. We address the quantum meruit issue first.

 In *Kopelman* this Court made clear that recovery of attorney's fees under quantum meruit is not limited to the number of hours expended on a case. In syllabus point 2 of *Kopelman, supra,* we said:

Although the amount of time spent by each respective firm is an important consideration in a contingency fee case where lawyers employed by one firm leave that firm and take a client with them and no contract exists governing how the fees are to be divided, a circuit court also must consider retrospectively upon the conclusion of the case: (1) the relative risks assumed by each firm; (2) the frequency and complexity of any difficulties encountered by each firm; (3) the proportion of funds invested and other contributions made by each firm; (4) the quality of representation; (5) the degree of skill needed to achieve success; (6) the result of each firm's efforts; (7) the reason the client changed firms; (8) the viability of the claim at transfer; and (9) the amount of recovery realized. This list is not exhaustive, and a circuit court may consider other factors as warranted by the circumstances in addition to awarding out-of-pocket expenses. In making its determination, however, a circuit court must make clear on the record its reasons for awarding a certain amount. Such a determination rests in the sound discretion of the circuit court, and it will not [be] disturbed unless the circuit court abused its discretion.

*Kopelman* clarified our law on recovery of attorney's fees under quantum meruit. While the opinion sets out several intangible factors that should be considered by circuit courts in their rulings in this area, *Kopelman* made explicit that the factors listed are not exhaustive. That is, circuit courts are to be receptive to other legitimate factors proffered.

 The transcript of the hearing in this case shows that Wilson did not intend to seek

recovery against Castleberry under the theory of quantum meruit. His case was based upon an alleged oral fee sharing agreement with Castleberry. However, the circuit court prohibited Wilson from developing his theory of recovering his attorney fees and permitted evidence on the quantum meruit theory only. Castleberry presented evidence to show that Wilson was entitled to $1,100 under quantum meruit.[6]

At the end of the hearing the circuit court informed Wilson that he did not present any evidence of quantum meruit and that he failed to respond to a previously filed memorandum of law by Castleberry. The circuit court then informed Wilson that he would be allowed an additional four days to submit quantum meruit evidence and file a memorandum of law.

Wilson filed a memorandum of law on January 10, 1995. However, he did not submit evidence on the issue of quantum meruit as the court had instructed him. Subsequently the circuit court entered an order quashing the charging lien. Thereafter Wilson filed a motion seeking an extension of time to submit evidence. Wilson alleged in the motion that he misunderstood the circuit court's instructions and thought that all that was required from him was a memorandum of law. The circuit court denied Wilson's request for an extension of time. On appeal Wilson contends that he did not have adequate notice to prepare evidence for a quantum meruit theory of recovery.

The record in this case reveals that Wilson was fully cognizant that Castleberry was going to present evidence at the hearing. Castleberry made the files in the underlying case available to Wilson well in advance of the hearing. Wilson, however, did not avail himself of the timely opportunity to go through the files and document his work efforts in the case. Additionally, Wilson had an adequate opportunity prior to the hearing to reflect upon any intangible factors that might have been justified as compensable under the quantum meruit theory. Instead

---

**6.** This figure was calculated on Castleberry's evidence that Wilson worked only eleven hours on the case, at a rate of $100 per hour.

of utilizing the time he had before the hearing was held, in order to prepare to establish a claim under quantum meruit, Wilson did nothing. The circuit court showed great restraint under the circumstances, by specifically granting Wilson additional time after the hearing in order to submit quantum meruit evidence. Wilson is not a layperson. He is an attorney with years of experience. The record in this case makes clear that Wilson had prior knowledge that an adverse ruling might result from the proceeding which could effectively impair his case. Under the circumstances of this case, we are convinced that the circuit court's ruling on the issue of quantum meruit was correct. Therefore, we affirm that part of the circuit court's order dismissing Wilson's claim under the theory of quantum meruit.

### C.

### *Recovery Under Oral Agreement*

A second theory of recovery that Wilson had in this case was grounded in an alleged oral agreement between the two parties. The decisions of this Court have not always made clear that, in a charging lien proceeding, an attorney's recovery may be premised upon a separate agreement between the attorneys involved. Courts in other jurisdictions have been explicit on this issue. *See Ex parte Counts,* 683 So.2d 968 (Ala.1996); *Jones v. Donovan,* 244 Ark. 474, 426 S.W.2d 390 (1968); *Komisarow v. Lansky,* 139 Ind. App. 351, 219 N.E.2d 913 (1966). *See also* 73 A.L.R.2d 991 and the cases cited therein. We pointed out in *Kopelman* that:

> 'In a contingency fee case, where attorneys employed by one firm leave the firm and take clients, and subsequently obtain a recovery, a district court, in allocating attorney fees, should consider the length of time each firm spent on the case, the proportion of funds invested by each firm, the quality of representation, the result of each firm's efforts, the reason the client changed firms, the viability of the claim at transfer, the amount of recovery realized, and any *pre-existing partnership agreements.*'

*Kopelman,* 196 W.Va. at 499, 473 S.E.2d at 920 (*quoting* syllabus, *In re L-tryptophan*

*Cases,* 518 N.W.2d 616 (Minn.Ct.App.1994)) (emphasis added). While *Kopelman* dealt with the single theory of quantum meruit, our decision clearly indicated that the factors we developed in that case to help determine quantum meruit are used "in a contingency fee case where lawyers employed by one firm leave that firm and take a client with them and *no contract exists governing how the fees are to be divided* [.]" *Kopelman,* 196 W.Va. at 499, 473 S.E.2d at 920. (emphasis added.)

The issue of an oral agreement between attorneys to share in fees recovered from cases jointly worked on was addressed by this Court in *Watson v. Pietranton,* 178 W.Va. 799, 364 S.E.2d 812 (1987). *Watson* involved an action brought by the executrix of an attorney's estate against a law firm to enforce a fee splitting agreement between the attorney and law firm. The deceased attorney, Mr. Pietranton, had engaged the law firm to work with him on thirty-five cases. An oral agreement between the attorneys called for an equal share of any recovery on the cases. In one particular case Mr. Pietranton was retained by Royal and Kelly Sayre to represent their interests in the wrongful death of their two children. Mr. Pietranton subsequently asked the law firm to work with him on the case. Mr. Pietranton, however, did not inform the Sayres that he had associated with a law firm. Shortly after engaging in preliminary work on the case, Mr. Pietranton died. The law firm thereafter contacted the Sayres and entered into a separate contract to represent them in the wrongful death claims.

The law firm filed a complaint on behalf of the Sayres. The case eventually went to trial. A verdict was returned in favor of the Sayres for the sum of $800,000. After the verdict was returned the executrix of Mr. Pietranton's estate (his wife) sent a letter to the firm requesting a share of the fee recovered in the Sayre case. The law firm filed a declaratory judgment action to determine what, if any, fee was owed to the estate of Mr. Pietranton. The executrix answered and filed a counterclaim demanding fifty percent of the attorney fees obtained in the case. The attorney fees amounted to $200,000. The circuit court ruled in favor of the law

firm. The circuit court found that the fee arrangement between the deceased Mr. Pietranton and the law firm violated DR 2–107 of the West Virginia Code of Professional Responsibility.[7]

This Court rejected the circuit court's decision. Instead, this Court formulated the single syllabus in *Watson,* where we held that "[a] lawyer or law firm which enters into and honors a fee-splitting agreement with another lawyer may not later raise DR2–107 of the West Virginia Code of Professional Responsibility as a bar to enforcement of the agreement." We concluded that based upon the evidence of past fee sharing arrangements, the executrix of the estate was entitled to fifty percent of the attorney fees obtained by the law firm.

■ Based upon the above, we conclude that when attorneys jointly undertake to represent a client there is a rebuttable presumption that the attorneys are to equally share any recovery of attorney's fees. This rebuttable presumption arises only in the absence of a valid oral or written agreement between the attorneys as to the division of attorney's fees.

■ In this case, Wilson contends that an oral agreement existed between Castleberry and him, concerning the division of attorney fees recovered in the underlying Shaffer case. In an effort to show that agreement Wilson attempted to question Castleberry, during cross examination, about oral agreements they had involving other cases. The circuit court precluded such testimony. Although the circuit court did not allow Wilson to develop specific aspects of the alleged oral fee sharing agreement between the parties, Wilson elicited from Castleberry an admission that they orally agreed to equally share in the attorney fees from any recovery in the Shaffer case.

■ In spite of the admission by Castleberry that an oral agreement existed between the two attorneys regarding their attorney fees, the circuit court precluded any development of that theory by Wilson as a basis of recovery. We believe it was error for the circuit court not to allow Wilson to proffer evidence that might have allowed him to recover under the alleged oral agreement. We hasten to point out that we are not intimating that the alleged oral agreement is valid or enforceable. Moreover, the record is silent as to whether any such oral agreement contemplated the amount of work effort necessary from each attorney in order to share the attorney fee on a fifty-fifty basis and how the oral agreement would be modified, if at all, should the attorneys terminate their relationship prior to recovery in the case. Further, the record lacks evidence as to whether such an agreement was conditioned on both parties assisting in all aspects of the case and the amount of compensation to each party in the event of settlement as opposed to trial. Our position here is merely that Wilson had a right to develop this theory with appropriate evidence. We hold, therefore, that a charging lien is the equitable right of an

---

7. This Court promulgated and adopted the Rules of Professional Conduct to replace the Code of Professional Responsibility, effective January 1, 1989. The equivalent of DR 2–107 is found in R.P.C., Rule 1.5(e), which now provides:

(e) A division of a fee between lawyers who are not in the same firm may be made only if:
(1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representations;
(2) the client is advised of and does not object to the participation of all the lawyers involved; and
(3) the total fee is reasonable.
(4) The requirements of 'services performed' and 'joint responsibility' shall be satisfied in contingent fee cases when: (1) a lawyer who is regularly engaged in the full time practice of law evaluates a case and forwards it to another lawyer who is more experienced in the area or field of law being referred; (2) the client is advised that the lawyer who is more experienced in the area or field of law being referred will be primarily responsible for the litigation and that there will be a division of fees; and, (3) the total fee charged the client is reasonable and in keeping with what is usually charged for such matters in the community.

We note that in the instant proceeding the question of a violation of Rule 1.5(e) does not arise. Both parties endorsed the initial contract with Shaffer. Of course, Shaffer terminated that contract and signed a separate contract with Castleberry. However, that is of no consequence insofar as Rule 1.5(e) is concerned, because Wilson's claim was triggered from the initial contract with Shaffer.

attorney to have fees and costs due the attorney for services in a particular action secured by the judgment or recovery in such action. A charging lien by an attorney against another attorney, involving a case in which each worked, may be premised upon an oral or written fee sharing agreement between the attorneys. A charging lien brought against another attorney may proceed in a separate suit or the underlying action in which the attorneys had formerly worked on together. The circuit court's ruling which prohibited Wilson from proffering evidence of an alleged oral agreement between the parties is reversed.

## IV.

## CONCLUSION

Based upon the foregoing, we affirm the circuit court's summary judgment ruling on the quantum meruit theory. However, we reverse that part of the circuit court's ruling which prohibited Wilson from proffering evidence on an alleged oral fee sharing agreement. In the interest of judicial economy and efficiency, we are remanding the issue of an oral fee sharing agreement to the court of Judge Ranson with directions that she transfer this case to the court of Judge Paul Zakaib for consolidation with the case of *Wilson v. Castleberry*, Civil Action No. 95–C–22, which involves the parties herein and is pending before him. *See* syllabus, *Hanlon v. Joy Mfg. Co.*, 187 W.Va. 280, 418 S.E.2d 594 (1992); syllabus, *State ex rel. Bank of Ripley v. Thompson*, 149 W.Va. 183, 139 S.E.2d 267 (1964). *See also W. Va .R. Civ. P.* 42(b).

Affirmed in Part; Reversed in Part; and Remanded with Directions.