STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**Christopher J. Wallace and
The Wallace Firm, PLLC
Plaintiffs Below, Petitioners**

**FILED**
**April 7, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-1333** (Hancock County Civil Action No. 13-C-56-H)

**Raymond A. Hinerman and
Hinerman & Associates, PLLC
Defendants Below,
Respondents**

## MEMORANDUM DECISION

The petitioners Christopher J. Wallace and The Wallace Law Firm, PLLC, (hereinafter jointly referenced as "the petitioner"), pro se, appeal the decision of the Circuit Court of Hancock County denying the relief sought by the petitioner in his request for declaratory judgment regarding the allocation of attorney fees between the petitioner and his former employer, the respondents Raymond A. Hinerman and Hinerman & Associates, PLLC (hereinafter jointly referenced as "the respondent"). The respondent, pro se, filed a timely response.

This Court has carefully reviewed the arguments of counsel, appendices, and applicable precedent, and the case is mature for consideration. This Court finds that the circuit court erred in resolving this matter upon the application of a clause within the contingency fee agreement between the respondent and certain clients. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

## I. Factual and Procedural History

The petitioner, Mr. Wallace, was employed as an attorney for Hinerman & Associates, PLLC, in Weirton, West Virginia, for fourteen years. In January 2013, he resigned from the firm to begin his own legal practice. While employed by the law firm, the petitioner had represented workers compensation clients, and he solicited certain individuals

1

as clients for his solo practice when he left the law firm.[1]  Certain clients chose to employ the petitioner in his newly-created practice as their attorney, and the contingency fees generated through those clients' claims are at issue in this case.

Subsequent to his departure from the law firm, the petitioner proposed a division of attorney fees, based on the factors enunciated in *Kopelman & Associates, L.C. v. Collins,* 196 W.Va. 489, 473 S.E.2d 910 (1996).[2]  The respondent declined to engage in such division of fees.  Thus, on April 8, 2013, the petitioner filed a declaratory judgment action "limited to the fees earned from workers' compensation matters in which clients originally signed a contract with Hinerman & Associates, but have subsequently elected to have Plaintiffs [Petitioner] represent them. . . ."

On July 26, 2013, the circuit court and the parties agreed that *Kopelman* provides the appropriate framework for dividing attorney fees.  An August 14, 2013, order provides: "The parties agree that *Kopelman and Assoc., L. C. v. Collins* . . . shall be the law applied to the distribution of attorney fees in all disputed matters which are the subject of the instant civil action."  That order also explains that the circuit court had "been informed that [the petitioner] has deposited into an escrow account funds of and from workers' compensation awards or other fees that are in dispute."

Pursuant to the parties' agreement, the circuit court held an October 16, 2013, hearing on five sample cases to resolve the method of fee division, utilizing the principles

---

[1]The respondent emphasizes the manner in which the petitioner departed the Hinerman law firm, leaving while the respondent was on vacation and asking other employees not to inform the respondent about his departure.  The petitioner also removed some of the firm's workers compensation files.  He used "The Wallace Firm, PLLC" letterhead, listing his office address as 320 Penco Road, Weirton, West Virginia, but the respondent contends that the petitioner did not actually have an office at that address at that time.  The petitioner also used a form contract identical to that used by the respondent's law firm to sign clients to The Wallace Firm.

[2]The *Kopelman* factors, as more thoroughly enumerated later in this opinion, include such items as risks assumed by the attorneys, complexity of the case, funds invested and results obtained, quality of representation and skill, reason for the client's change of firms, viability of the claim at time of transfer, and the amount of recovery.  196 W.Va. at 500-01, 473 S.E.2d at 921-22.

2

of *Kopelman.*[3]  On March 1, 2014, the circuit court issued a "Judgment Order - Partial" on the five sample cases evaluated during the October 2013 hearing.[4]  In that order, the circuit court specifically indicated that "the parties unanimously agreed that *Kopelman* . . . shall be the law applied to the distribution of attorney fees in all disputed matters which are the subject of the instant civil action."  However, instead of applying the *Kopelman* factors, the circuit court relied upon a contingency fee contract each client had signed with the respondent.  That contract provided, in pertinent part: "Should the client terminate this relationship without good cause, Hinerman & Associates is entitled to collect their fee as set forth herein.  Otherwise, the law set forth in *Kopelman v. Collins*, 474 S.E.2d 910 (WV 1996), applies."[5]  Based upon that contingency fee contract, the circuit court concluded that the respondent was entitled to fully recover on each contingency fee contract because the clients discharged Hinerman & Associates without good cause.

The petitioner filed a motion to alter or amend the March 1, 2014, order.  In response, the circuit court issued a July 29, 2014,[6] order denying the petitioner's motion.  On appeal, the petitioner contends the circuit court's decision was improperly based on the issue of the existence of good cause for the clients' departure, an issue that was not raised, addressed, or contemplated by the parties.  The petitioner argues that the respondent did not assert a contract defense regarding good cause for the clients' departure to sign with the petitioner.  Further, the petitioner contends the circuit court failed to apply the *Kopelman* factors to the attorney fee dispute and this case should consequently be remanded for a ruling

---

[3]The sample cases were analyzed during the hearing, and Attorney Sue Howard testified as the respondent's expert, opining that the petitioner had mishandled the five sample cases.  Attorney Vincent Gurrera also testified as the respondent's expert and opined that the petitioner had improperly solicited the respondent's clients and had used a false address on the letterhead of his new law firm.

[4]According to the March 1, 2014, order, the sample cases were selected as follows: "Plaintiffs were to select two files to be presented at an evidentiary hearing before the bench where the Court would apply *Kopelman*. . . .  Defendants were then to select two files to be similarly presented. . . .  The parties were urged to agree on a fifth file to be presented for determination."

[5]The term "good cause" is not defined in the contract.

[6]After this Court deemed the July 29, 2014, order interlocutory, the circuit court denied the petitioner's request for findings of fact and conclusions of law sufficient to seek a writ of prohibition and instead entered a nearly identical order, dated December 2, 2014, stating that it is was a final and appealable order.

3

based upon the principles of *Kopelman.*

## II.  Standard of Review

In syllabus point one of *Trickett v. Laurita*, 223 W.Va. 357, 674 S.E.2d 218 (2009), this Court explained:

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.  Questions of law are subject to *de novo* review."  Syllabus point 2, *Walker v. West Virginia Ethics Commission*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

With this standard of review as guidance, we proceed to address the issues of this case.

## III.  Discussion

As outlined above, this civil action was initiated as an effort to determine the appropriate division of attorney fees in the subject contingency fee cases.  The parties agreed that the factors enumerated in *Kopelman* should govern the resolution, and they requested a *Kopelman* hearing on the issue.  The circuit court, sua sponte, transformed the matter into a finding that the petitioner failed to prove good cause for the clients' departure from the respondent's law firm and therefore the respondent was entitled to all fees.  At the outset of our discussion, we recognize that a client may discharge an attorney for any reason at any time.  Syllabus point six of *Committee on Legal Ethics of The West Virginia State Bar v. Cometti*, 189 W. Va. 262, 430 S.E.2d 320 (1993), clearly provides: "Rule 1.16(a)(3) of the Rules of Professional Conduct allows a client to discharge an attorney, and, with regard to a civil case, an attorney may be discharged at any time with or without cause, subject to liability for payment for the lawyer's services."[7]  This case does not present an issue of the

---

[7]Variations on this general rule exist within other contexts, "such as the rule in court-appointed criminal cases where there is a termination of the attorney-client relationship or the issue of court approval of the termination of the attorney where a civil case is in litigation."  *Cometti,* 189 W. Va. at 269 n.8, 430 S.E.2d at 327 n.8 (1993); *see also Cardot v. Luff*, 164 W.Va. 307, 312 n.5, 262 S.E.2d 889, 893 n.5 (1980) (holding that in court-appointed criminal cases, "we have precluded the client from the absolute right of discharging the

(continued...)

*right* to discharge an attorney; it is simply a matter of how attorney fees are to be divided in a contingency fee case *when* an attorney is discharged, notwithstanding the circuit court's conversion of the issue into an examination of the clients' good cause for departure.

The petitioner contends he clearly asserted his position that the clients departed the respondent's law firm for good cause, namely to continue to employ the petitioner as their attorney. He further emphasizes that the only evidence related to the good cause issue was the petitioner's own affirmative testimony that the clients desired to change law firms to employ the only attorney who had ever worked on their claims. Moreover, the petitioner maintains that the respondent did not deny the petitioner's good cause averment in the complaint; nor did he present evidence to the contrary on the issue of the clients' good cause departure.[8] Therefore, the petitioner argues that the circuit court's ultimate decision represented a significant departure from the approach previously agreed to by the parties and was improperly based on a contract issue neither raised nor argued by the parties.

The *Kopelman* framework for division of attorney fees is explained in syllabus point two of *Kopelman:*

> Although the amount of time spent by each respective firm is an important consideration in a contingency fee case where lawyers employed by one firm leave that firm and take a client with them and no contract exists governing how the fees are to be divided, a circuit court also must consider retrospectively upon the conclusion of the case: (1) the relative risks assumed by each firm; (2) the frequency and complexity of any difficulties encountered by each firm; (3) the proportion of funds invested and other contributions made by each firm; (4) the quality of representation; (5) the degree of skill needed to

---

[7](...continued)
attorney, which is the general rule.").

[8]The petitioner emphasizes the absence of any attempt by the respondent to plead, assert, or argue the contract defense ultimately utilized by the circuit court. The respondent failed to deny the petitioner's specific averment that the contract term had been satisfied through the clients' election to continue representation by the petitioner; thus, the petitioner asserts that the respondent essentially admitted the good cause contract term had been satisfied. *See* W.Va. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading.").

5

achieve success; (6) the result of each firm's efforts; (7) the reason the client changed firms; (8) the viability of the claim at transfer; and (9) the amount of recovery realized. This list is not exhaustive, and a circuit court may consider other factors as warranted by the circumstances in addition to awarding out-of-pocket expenses. In making its determination, however, a circuit court must make clear on the record its reasons for awarding a certain amount. Such a determination rests in the sound discretion of the circuit court, and it will not [be] disturbed unless the circuit court abused its discretion.

196 W.Va. at 491, 473 S.E.2d at 921.

As recognized in *State ex rel. Bell & Bands, PLLC v. Kaufman*, 213 W. Va. 718, 584 S.E.2d 574 (2003), "this Court has set up a mechanism in *Kopelman* . . . [through] which circuit courts may determine fees in disputes between law firms." *Id.* at 723, 584 S.E.2d at 579. This Court in *Kopelman* addressed a factual scenario similar to the present case and clearly articulated the factors to be utilized to determine "how a law firm in a contingency fee case should be compensated when lawyers from that firm leave and take contingency fee clients with them." 196 W.Va. at 493, 473 S.E.2d at 914. This mechanism is appropriately designed to protect the interests of both the original and subsequent attorneys, permitting evaluation of their rights to attorney fees. "[M]atters that will control and determine how contingency fees are to be allocated between disgruntled and former law associates involve, for the most part, a highly-fact-specific inquiry." *Id.*

Since its inception, the *Kopelman* approach has remained the primary mechanism for division of attorney fees in contingency fee cases. In *Shaffer v. Charleston Area Medical Center, Inc.,* 199 W. Va. 428, 485 S.E.2d 12 (1997), this Court heralded the *Kopelman* decision, noting that it "clarified our law on recovery of attorney's fees. . . ." *Id.* at 434, 485 S.E.2d at 18. This Court also explained that although *Kopelman* "sets out several intangible factors that should be considered by circuit courts in their rulings in this area, *Kopelman* made explicit that the factors listed are not exhaustive." *Id.* at 435, 485 S.E.2d at 19.

Other jurisdictions have also acknowledged the utility of a *Kopelman*-type approach, acknowledging that "as a matter of policy, this rule preserves a client's right to discharge his or her attorney at any time." *Dudding v. Norton Frickey & Assocs.*, 11 P.3d 441, 447 (Colo. 2000); *see also Galanis v. Lyons & Truitt*, 715 N.E.2d 858, 861 (Ind. 1999) (holding that quantum meruit recovery prevents client from paying percentage fee to more than one attorney). As observed in *Dudding*, "the rule preserves the attorney's right to

receive some value for the legal services he or she provided."  11 P.3d at 448; *see also Fox & Assocs. Co.*, 541 N.E.2d 448, 450 (1989) ("The new rule strikes the proper balance by providing clients greater freedom in substituting counsel, and in promoting confidence in the legal profession while protecting the attorney's right to be compensated for services rendered.").  "Without the remedy of quantum meruit, the client could receive significant value from an attorney's legal services without tendering any payment in return." *Dudding*, 11 P.3d at 447.

Thus, the efficacy of the *Kopelman* framework has been firmly established and was recognized by the litigants in the case sub judice as the proper method for dividing attorney fees.  This Court finds that the circuit court abused its discretion in failing to engage in a *Kopelman* analysis of the evidence adduced at the *Kopelman* hearing and in relying instead upon the contractual issue of good cause for the clients' departure, a matter not pled, argued, or addressed in the evidentiary presentation at the *Kopelman* hearing below.  Even if this case had been pled and developed in the context of an alleged breach of contract, including introduction of evidence regarding good cause for the clients' departure, we conclude that the ultimate division of attorney fees in these contingency fee cases must be determined based upon the factors enumerated in *Kopelman*.[9]  One of those factors, as referenced above, is "the reason the client changed firms."  196 W.Va. at 500, 473 S.E.2d at 921.[10]

## IV.  Conclusion

Based upon the foregoing, this Court reverses the decision of the Circuit Court of Hancock County and remands this matter for a determination of division of fees between the petitioner and the respondent's law firm, as contemplated by *Kopelman* and based upon evidence adduced at the hearing previously held in this case.

Reversed and Remanded with Directions.

---

[9]This Court notes that the respondent's law firm would be entitled to any portion of fees earned while the petitioner was employed by the firm, based upon the employment relationship between the petitioner and the respondent.

[10]It is within the discretion of the circuit court to determine whether the current record is adequate for purposes of this *Kopelman* division of attorney fees.  Additional hearings may be conducted, if the circuit court finds such hearings necessary.

**ISSUED:** April 7, 2016

**CONCURRED IN BY:**
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II


**DISSENTING AND WRITING SEPARATELY:**

Ketchum, Chief Justice, dissenting:

The issue in this case is the amount of attorney fees Mr. Hinerman can collect from his former clients. They are the persons responsible for the payment of Mr. Hinerman's fees. They are not parties to the declaratory judgment action. The declaratory judgment action was brought in the name of their new lawyer, not by the clients. Although the issue of the petitioner's standing to bring the underlying declaratory judgment action was not assigned as error in this appeal, it was raised by the respondent in a motion to dismiss and as an affirmative defense in his answer. This issue should have been addressed by the circuit court. On remand, I believe the circuit court should have been required to address the issue of standing.