**WESTERN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Dan NANNEY, etc., et al., Defendants,**
**Milton Kelner, Intervening Defendant.**

**Civ. A. No. 2229.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Feb. 11, 1969.

Roy C. Nelson, Elizabethton, Tenn., for plaintiff.

Lewis B. Merryman and Robert E. Banks of Street, Banks & Merryman, Elizabethton, Tenn., for defendants Nanney (all but Toni Nanney).

S. G. Milligan, Greeneville, Tenn., for defendants (all but Toni Nanney).

M. Lacy West, Kingsport, Tenn., Kelner & Lewis, Miami, Fla., for intervening defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This Court ordered on August 15, 1968, herein, 290 F.Supp. 687, 690, that no part of the fund interpleaded herein be paid to or in behalf of the defendant Mrs. Toni Nanney until the matter of the claim of Kelner and Lewis, Esqs., of a lien for their services to her as attorneys had been adjudicated or lawfully settled. Milton Kelner, Esq., of such counsel, having filed in civil action no. 2198, this district and division, a notice of his firm's claim, and the subject matter in both such actions being the same fund, this Court ordered on August 19, 1968 that Mr. Kelner assert such claim herein as an intervening defendant or suffer such claim in no. 2198 to be stricken.

Such intervening claim was filed on August 29, 1968, accompanied by a motion by the intervening claimants for a summary judgment,[1] Rule 56(a), Federal Rules of Civil Procedure.

Concluding that there were genuine issues of fact outstanding between the defendant Mrs. Nanney and the intervening defendant Mr. Kelner, the Court denied the motion for a summary judgment, memorandum opinion and order of November 8, 1968 and the intervening claim was assigned for evidentiary hearing and heard on December 20, 1968. The disputed issues considered thereupon were, (a) whether Kelner and Lewis was retained by Mrs. Nanney to represent her in her criminal as well as her civil matter, and (b) whether Mr. Kelner properly represented Mrs. Nanney in the matter of her claim to the proceeds of the fund interpleaded and remaining herein.

Mrs. Nanney was arrested by authorities of Dade County, Florida on July 25, 1967 and charged with having murdered in connection with insurance claims. Mr. sister in Elizabethton, Tennessee was advised seasonably of her incarceration. The following day Mrs. Nanny's sister and father arrived in Miami.

Her father, Guy Thompson, had known Mr. Kelner for about ten years and had formed a favorable opinion of his proficiency in the representation of clients in connection with insurance claims. Mr. Thompson, on reaching Miami, telephoned Mr. Kelner, advised him of Mrs. Nanney's plight, and sought his recommendation. Mr. Kelner recommended that Mr. Thompson consult Harry W. Prebish, Esq., a specialist in criminal law, and by telephone requested Mr. Prebish to visit Mrs. Nanney in jail.

In the interim, Mrs. Nanney had conferred with another attorney, but on the advice of her father, she retained Mr. Prebish. Mr. Thompson paid Mr. Prebish five hundred dollars ($500) to investigate the matter and to represent his daughter at the necessary [2] hearing, with no agreement as to his further representation. On the same date, Mr. Thompson and another daughter, Miss Charlynne Thompson, visited Mrs. Nanney's home in Fort Myers, Florida. There they discovered two policies of insurance on the life of the late Mr. Nanney, on each of which Mrs. Nanney was the primary beneficiary and her three children the secondary beneficiaries.

Mr. Thompson wished Miss Thompson to become acquainted with Mr. Kelner, and subsequently they visited him in his offices. In the course of conversation, Mr. Thompson apprised Mr. Kelner of the discovery of the policies, and, on his request, Mr. Kelner was permitted to review them.

A hearing was held on August 18, 1967, and Mrs. Nanney was enlarged on bail

---

1. In his affidavit supporting this motion, Mr. Kelner offered to make himself available for giving of testimony and answering any and all questions by the Court and/or cross-examination by the attorney for any party. He suggested "that this be accomplished" * * * by means of a long-distance telephone conference examination * * * *" or the taking of his deposition in Miami, Florida. Mr. Kelner was permitted to plead and conduct his intervening claim, Osborn et al. v. Bank of the United States (1824), 22 U.S. 738, 828, 9 Wheat. 738, 6 L.Ed. 204, with local rule 2(a), requiring association of counsel in this District, being waived by the Court. But, in so doing, he was bound to so plead and conduct his claim as, by the rules of this Court, permitted. 28 U.S.C. § 1654. The rules of this Court do not permit the examination of witnesses by long distance telephone conference. His "suggestion" to such effect, therefore, was ignored, and his intervening claim was presented in accordance with the rules of this Court.

His claim would have been stricken for failure to prosecute it, had he, without good cause shown, have failed to appear for that purpose at the assigned time. However, Mr. Kelner was definitely wrong in his assertion in open court that he made such appearance by order, direction or "suggestion" of this Court.

2. It appears that a person arrested in Florida for a capital offense may not be enlarged on bail until there has been a preliminary hearing or a hearing for purposes of considering release under bond.

bond, which Mr. Prebish arranged for a bonding agency to post. Soon after Mrs. Nanney was enlarged, she and her father went to Mr. Prebish's offices. Mr. Prebish advised Mrs. Nanney that Mr. Kelner had her insurance contracts in his possession and "* * * is going to represent you * * *" in connection with the insurance claims. Mrs. Nanney was unaware until then that Mr. Kelner had such policies in his possession. Thereupon, a conference was held with Mr. Kelner in his offices, where Mrs. Nanney met Mr. Kelner for the first time.

Mr. Kelner dictated a proposed document authorizing his firm and Mr. Prebish jointly to represent Mrs. Nanney in both her criminal and civil problems. Mr. Prebish objected to some of the proposed language, stating that his customary fee in first-degree murder representations was $25,000, that he was agreeing to represent Mrs. Nanney for only $10,000, but that he wanted this amount not to be contingent in any manner and a majority of it paid within a short time.

*Inter alia*, Mrs. Nanney committed [3] to these her claims under all the insurance

---

3. The written memorandum of agreement follows:

### AUTHORITY TO REPRESENT

"I, the undersigned client, do hereby retain and employ

| KELNER & LEWIS | and | HARRY PREBISH |
|---|---|---|
| 412 Biscayne Building | | 1207 Biscayne Bldg. |
| 19 West Flagler Street | | 19 West Flagler Street |
| Miami, Florida | | Miami, Florida |

as my attorneys to represent me in:

a. defense of the criminal charges against me as the result of the death of my husband, Joseph Nanney;

b. collecting the proceeds of any and all insurance policies, including Western Life Insurance Co. of St. Paul, Minnesota, Policy #377240, as well as Connecticut General Life Insurance Co. policies and any and all other insurance policies that I or my children may have including policies covering the life of my husband, Joseph Nanney.

"I agree to pay all Court costs.* As compensation for their services, I agree to pay to my attorneys the following:

1. $10,000 as attorneys' fees, in addition to the $500.00 Retainer already paid for the defense of the criminal charges presently pending against me.

"In addition, I agree to pay to my said attorneys, from the recovery of any of the proceeds of my insurance policies, the following:

1. 33⅓% If settled without suit, or

    40% In the event suit is filed, or

    50% If an appeal is taken from the lower court by either side, or if garnished or any proceedings after judgment has to be brought to collect the judgment or any portion thereof.

"It is understood and agreed that the $500.00 previously paid and the $10,000 I herein agree to pay is not on a contingent basis, but that the employment for the collection of any and all proceeds of any and all insurance policies is on a contingent basis.

"I give my said attorneys the exclusive right to take all legal steps necessary:

a. to defend me in the criminal prosecution; and

b. to enforce my claim under any and all insurance policies where I or my children may be beneficiaries.

| "s/(Toni Kay Nanney) | s/ (Harry Prebish) | s/ (Milton Kelner)" |
|---|---|---|
| CLIENT | HARRY PREBISH | KELNER & LEWIS |

---

* It is undisputed that these attorneys agreed to advance such costs. The claim interposed by Mr. Kelner for a lien includes an item of $79.40 for costs.

policies wherein she and/or her children were beneficiaries. It was agreed between these attorneys[4] that Mr. Prebish would be leading counsel for Mrs. Nanney in the criminal matter and would take a two-thirds (⅔) split of the fee therefor, and that Mr. Kelner would be a leading counsel for her in the civil claims and would take a two-thirds (⅔) split of the fees therefor.

Although Mr. Kelner did not dictate the pertinent provisions thereof into the memorandum of this agreement, Florida law which subsisted at the time of the agreement became by implication a part of it. United States v. Quincy (1866), 71 U.S. (4 Wall.) 535, 550, 18 L.Ed. 403, 408. The direct legal operation of such law controlled or affected these attorneys' obligations thereunder. General Development Corp. v. Catlin, C. A.Fla.App. (1962), 139 So.2d 901. Thus, these attorneys were obligated under the agreement to " * * * 'faithfully, honestly, and consistently represent the interests and protect the rights, of' * * * " Mrs. Nanney, and to discharge their duties to her " * * * 'with the strictest fidelity, to observe the highest and utmost good faith toward' * * * " her and to obey her " * * * 'lawful directions.' * * * " Gay v. Heller, C.A. 5th (1958), 252 F.2d 313, 316–317 [7], citing Weekley v. Knight (1934), 116 Fla. 721, 156 So. 625 and In re Clifton (1934), 115 Fla. 168, 155 So. 324.

Mrs. Nanney returned forthwith to Elizabethton with her relatives thereafter. While enlarged on bail awaiting her criminal trial in Florida, she was confronted with an equity proceeding in Carter County, Tennessee to remove from her custody temporarily her children. With financial assistance from her grandfather, she employed Stuart Hampton, Esq., a member of the bar of this Court, as her solicitor in that proceeding.

Mr. Kelner advised Mr. Hampton by letter of August 24, 1967 that his firm represented Mrs. Nanney; that Mr. Prebish represented her in the defense of the criminal charges; that he had been advised that Mr. Hampton had been consulted by " * * * our client * * * " with reference to regaining custody of her children; that Mr. Thompson had advised that a Tennessee resident had been appointed administrator of the estate of Mr. Nanney; that administration proceedings should be filed in Florida; but that such action in Florida was being withheld, pending Mr. Hampton's advice; and offered assistance to Mr. Hampton in furnishing affidavits or advising him with reference to the status of the criminal charges. Thus, Mrs. Nanney's exclusively authorized attorneys were then on notice to represent her interests, protect her rights, and take all legal steps necessary to enforce her claim under the plaintiff's policy without restriction. This included any action which might thereafter be instituted against Mrs. Nanney in the courts of Tennessee or elsewhere, relating to the enforcement of such claim.

The Chancery Court of Carter County entered a decree granting temporary custody of these children to the late Mr. Nanney's sister, Mrs. Donald E. Barnett, her husband, and Mrs. Lotta Nanney, their paternal grandmother. Mr. Hampton so advised Mr. Kelner by letter of September 7, 1967, expressed his opinion that an appeal on the technical record would result in a reversal of the decree, but stated he was not recommending an appeal because of the financial embarrassment of his client. One week afterward, Mr. Kelner advised Mr. Hampton that he was "suggesting" to Mrs. Nanney and her father that an appeal be taken and offered his " * * * assistance on this end. * * * "

Commencing on August 23, 1967, Mr. Kelner had pursued Mrs. Nanney's claim to the proceeds of the plaintiff's policy, from which the fund herein resulted. The plaintiff declined to pay the proceeds of its policy to any one. Messrs.

---

4. It does not appear that this private arrangement between her attorneys was made known to their client.

Prebish and Mr. Kelner were in professional agreement that in the situation suits should not then [5] be filed in Florida against the plaintiff to enforce their client's claims. Matters were pretty much in limbo thereafter until a verdict was reached in the criminal trial.

On March 11, 1968,[6] Mrs. Nanney was acquitted by a jury of the criminal charges. Her erstwhile lover and codefendant Mr. Felix Lopez was convicted therein and sentenced to life imprisonment. Mrs. Nanney made an accelerated departure from Miami after her acquittal and returned to Elizabethton.

On the day following Mrs. Nanney's acquittal, the administrator of the late Mr. Nanney's estate and his children, by their general guardian Mrs. Barnett, commenced an action against the plaintiff and Mrs. Nanney in the Chancery Court of Carter County, Tennessee, for a declaration that Mrs. Nanney had forfeited her rights to the proceeds of the plaintiff's policy and to award the fund to the complainants. A similar action was commenced against Mrs. Nanney as to another such policy.

Three days thereafter, Mr. Kelner renewed his client's demand on the plaintiff for payment, advising that action would be commenced to enforce it judicially, unless payment was received by April 1, next. He stated that his client had been acquitted of " * * * all criminal charges. * * * " On the same date, Mr. Kelner "suggested" that Mr. Hampton communicate with Mrs. Nanney concerning the commencement of proceedings to obtain judicially the return to her custody of her children. Pretermitting more compassionate reasons, the pecuniary interest of Mrs. Nanney in regaining legal custody of her children, and the necessity that her rights be pro-

tected in the chancery action as instituted against her, the plaintiff and the other insuror, at this point in time, is obvious. Her exclusively authorized attorneys took no legal steps to this end.

Mrs. Nanney and Mr. Hampton conferred in his offices on March 18. She advised Mr. Hampton that she was without funds, and that Mr. Kelner was her authorized leading counsel in relation to her claims against the plaintiff and the other insuror. While there, process was served on Mrs. Nanney in equity proceedings against her and the plaintiff and her and the other insuror. Mr. Hampton communicated late that afternoon by telephone with Mr. Kelner advising him of the pendency of these actions against his client. Mr. Hampton transmitted a copy of the action against the plaintiff and Mrs. Nanney to Mr. Kelner on Monday, March 18. Mr. Kelner commenced actions the following Wednesday in a Florida state court against the plaintiff and the other insuror, seeking enforcement of the claims of his client. He "suggested" the following day that Mr. Hampton (a) remove the action against his client and the plaintiff and another action involving another insuror to this Court, and (b) institute necessary proceedings to regain for his client the custody of her children, and transmitted to Mr. Hampton copies of the complaints he had filed the preceding day in Florida.

Mr. Hampton undertook such removals, only to discover that one of the state actions was unremovable, as not involving the jurisdictional amount in federal diversity actions. He advised Mr. Kelner of this development by telephone and requested more assurances about compensation for his services and the provision in advance of expenses. Mr. Kelner re-

5. Counsel did not wish to expose Mrs. Nanney to cross-examination by the plaintiff in a civil action on the policy, lest it be found advisable for her to claim her right against self-incrimination in the criminal action. After Mrs. Nanney's acquittal, they concluded that she remained exposed to a criminal charge of having been an accessory after the fact of her late husband's intentional and unlawful homicide.

6. All subsequent dates herein, unless otherwise expressly indicated, refer to the year 1968.

assured Mr. Hampton that "those who do the work will get paid," and, "I'll see that you get paid in this case."

Mr. Hampton and counsel for the plaintiff, respectively, removed the state court action against their clients to this Court on March 28. The complainants therein moved for a remand on April 10. Two days afterward Mr. Hampton advised Mr. Kelner of the filing of, and the hearing date on the motion. He offered to appear and defend the interests and protect the rights of Mrs. Nanney, but insisted that a definite arrangement be made concerning a fee for his services, observing that Mrs. Nanney was without funds and that Messrs. Kelner and Prebish had contracts covering such action. Despite being of her exclusively authorized counsel, Mr. Kelner advised Mr. Hampton in a telephone conversation six days afterward, " * * * you're going to have to look to Mrs. Nanney for your attorney's fee in this case. * * * " Mr. Hampton then told Mr. Kelner in picturesque East Tennessee language that he was withdrawing as counsel for Mrs. Nanney herein. He confirmed this intention by letter, stating that Mrs. Nanney had made no arrangements for payment of his fee and advised Mr. Kelner of the probable hearing date on a pending motion in a state court action against his client.

Mrs. Nanney and Mr. Thompson also communicated by telephone with Mr. Kelner about taking legal steps in representing her interests and protecting her rights in the actions relating to her insurance claims pending in Tennessee. Mr. Thompson was told that Mr. Kelner had no intention of associating with him Mr. Hampton or any other Tennessee lawyer. He suggested that someone else be employed and compensated to represent and protect Mrs. Nanney's rights in the state court action against her and the other insuror. He advised his client that she had " * * * hired Hampton; you pay him * * * "; that the other policy, involving only $2,000, did not warrant his making a trip to Tennessee; that it was not worth his while; that his

authority extended only to the plaintiff's policy; that she didn't " * * * need an attorney in Tennessee anymore * * * "; that he had a suit against the plaintiff pending in a federal court in Florida; and that he would " * * * see about * * * " getting the action in this Court removed to the Florida District Court.

The evidentiary hearing on the motion to remand no. 2198 from this Court was conducted on April 23. Mr. Hampton moved to be permitted to withdraw as Mrs Nanney's counsel. This motion was initially denied. Mr. Hampton then proceeded to represent Mrs. Nanney in the hearing. After all the evidence was received, the remand motion was withdrawn by those plaintiffs. Thereupon, Mr. Hampton, with Mrs. Nanney's express agreement in open court, was relieved of further responsibility. Neither Mr. Kelner nor Mr. Prebish did anything to represent Mrs. Nanney's interests or to protect her rights therein.

Mrs. Nanney thereupon retained James E. Brading, Esq., a member of the bar of this Court, to take legal steps to represent her interests and protect her rights in the state action against her and the other insuror and in reference to regaining custody of her children, conditioned upon Mr. Kelner's taking any depositions in Florida and advancing the expenses attendant thereto, to be reimbursed out of any recovery by her in the enforcement of her insurance claims. Mr. Brading wrote Mr. Kelner to such effect on Tuesday, April 30.

Mr. Kelner wrote Mr. Brading on the following Thursday that he had been advised by Mr. Thompson that Mr. Brading had been substituted for Mr. Hampton as attorney for Mrs. Nanney in the aforementioned civil action no. 2198. He stated that his firm had filed a " * * * similar lawsuit * * * " for his client against the plaintiff in the District Court for the Southern District of Florida, Miami Division. He "suggested" that Mr. Brading move to transfer no. 2198 to the District Court in Florida under the doctrine of *forum non conveniens*. He in-

quired whether Mr. Brading was " * * undertaking the subsidiary matter * * * " relating to the regaining by Mrs. Nanney of the custody of her children, and " * * * the Tennessee lawsuit dealing with the "Connecticut General Life Insurance Policy. We have a similar action pending in the Civil Court of Record * * *." He "suggested" that, if such procedure was available in Tennessee, " * * * that a similar motion be filed in your Tennessee action dealing with this policy to transfer that cause to Miami for trial * * *."

The following day Mr. Kelner advised Mr. Brading that he would " * * * be pleased to represent Mrs. Nanney on any depositions undertaken in Miami. * * I will advance the costs of depositions approved by myself as being reasonably necessary for the handling of her claim. You will note that I cannot give blanket insurance to cover all costs, since I would prefer to have some control over the incurring of costs. * * * " He enclosed copies of cited opinions which he hoped Mr. Brading would find " * * * useful. * * * "

Mr. Kelner complained on May 13, 1968 that he had not heard from Mr. Brading concerning his earlier "suggestions". There was received in his office on May 27, notification from Mrs. Nanney that Mr. Kelner's services were terminated, which he claims he did not see until May 28, " * * * in the evening * * *."[7]

In his novel communication to this Court, Mr. Kelner, who, along with Mr. Prebish, was then under exclusive contract to represent Mrs. Nanney, pointed out to the Court that she was without funds to hire an attorney to represent her in no. 2198; that Mr. Hampton's firm had withdrawn its representation of her, because his client could not pay for legal services or advance costs; that she was able to pay only a nominal fee to Mr. " * * * Prebish, for the preparation and presentation of the seven day[8] murder trial * * * ". Mr. Kelner expressed his opinion that the costs of " * * * relitigating this [the criminal] trial in Tennessee present an oppressive and insurmountable burden to * * * " his client; he charged the aforenamed administrator with "harassment" in filing no. 2198; and he flatly stated that no. 2198 " * * * should be * * * " transferred to the federal District Court at Miami.

Notwithstanding this Court has a local rule[9] prohibiting any action on matters " * * * submitted by letter to the Judge * * * ", Mr. Kelner requested that his letter be deemed a petition to transfer no. 2198 to the District Court at Miami. He sought to excuse his not filing a " * * * formal pleading * * * ", making a " * * * formal appearance * * * ", or taking any legal steps to represent his client's interests or protect her rights on his not being admitted to practice in Tennessee courts or in this Court[10] and the " * * * prohibitive * * * " cost to him[11] of making proper appearance in this Court.

After relieving herself of Mr. Kelner's services, on June 4, Mrs. Nanney ap-

---

7. This is a contention of unusual significance because this Court received a letter postmarked "PM" of the same date from Mr. Kelner, and under the same date he also wrote Mrs. Nanney, enclosing a copy of that letter which he stated was " * * * sent before I received your letter directing me to terminate my services in your behalf. * * * " He included therein another statement which is blatantly contradictory of his previous statement to Mr. Brading: *i. e.*, " * * I agreed to represent you at any and all depositions in the Miami area whether the suit was in Miami or Tennessee. * * * " See, *supra.*

8. All other references in this connection are to an eight-day trial.

9. Local rule 12(a).

10. Mr. Kelner was permitted under the local rules of this Court to represent Mrs. Nanney's interests in this Court. See *infra.*

11. This cost does not appear to have been "prohibitive" when Mr. Kelner appeared formally and took legal steps to assert the interest and protect the rights of his law firm.

peared formally with her substitute counsel, M. Lacy West, Esq., also a member of this Court's bar. His appearance of record was linked with an order allowing his client thirty (30) days in which to take legal steps in protection of her rights and in her interest.

The plaintiff interpleaded $45,880 as the proceeds of its policy on the life of the late Mr. Nanney on June 13. The defendants herein were enjoined permanently, on June 28, from instituting further proceedings thereon. Mr. Kelner's firm [12] interposed its claim of a lien on July 15 in no. 2198 for the aforementioned contracted fee, reasonable compensation, and costs, " * * * no part of which has been paid. * * * "

Of the adjusted interpleaded fund of $45,642.21 herein, the Court on August 26 approved as to the minor defendants a compromise settlement in the aggregate amount of $19,821.11, with the additional amount of $25,821.10 agreed to be paid by the plaintiff to Mrs. Nanney being held in the registry until this adjudication of the entitlement of Mr. Kelner's firm to a lien thereon or lawful settlement by compromise of the matter of its fees.

The length of the foregoing findings is necessitated by the adjudication now required of this Court. Any contractual arrangement to which the defendant Mrs. Nanney and the intervening defendant firm, Kelner and Lewis, is a Florida contract. Any attorneys-client relationship created therein is under Florida law. This Court may safely pretermit further construction of that agreement.

■ Attorneys of record who begin a suit in a court of record in Tennessee have a lien upon the plaintiff's right of action from the date of the filing of the suit. T.C.A. § 29–202. Such lien attaches to a compromise settlement of the suit and cannot be defeated or satisfied by a voluntary settlement by the client without his attorney's consent. Tompkins v. Nashville, C. & St. L. Railroad (1902), 110 Tenn. 157, 162 [2], 72 S.W. 116, 61 L.R.A. 340, 100 Am.St.Rep. 795.

■ That Messrs. Kelner and Lewis were at the time they were authorized exclusively with Mr. Prebish to represent Mrs. Nanney, not admitted to practice in Tennessee, is no bar to their lien in this Court under *quantum meruit* for the reasonable value of whatever legal services they rendered her. Spanos v. Skouras Theatres Corp., D.C.N.Y. (1964), 235 F.Supp. 1, 11–12 [7]. Although attorneys admitted to practice in this District Court must have been admitted and entitled to practice in the Tennessee Supreme Court, local rule 1(a), no provision of Tennessee law regulating the practice of law in the state courts could obstruct in any way such practice under the rules of a federal court, 28 U.S.C. § 1654. In the light of any incompatibility between Tennessee law and the aforecited federal statute, state law must yield to the federal legislation. Sperry v. Florida (1963), 373 U.S. 379, 384, 83 S.Ct. 1322, 10 L.Ed.2d 428, 432 [4]. Neither would it be in the public interest, where the intervenors were to represent their client in matters involving practice of an essentially interstate nature, to hold that attorneys are not entitled to compensation for such representation, because some of their services were to be performed in a state where they were not admitted to practice. Appell v. Reiner (1964), 43 N.J. 313, 204 A.2d 146.

Mr. Prebish is not an intervening claimant herein. The Court makes no adjudication concerning his relationship with Mrs. Nanney. Other than to find that the law firm of Kelner and Lewis and Mrs. Nanney created between them the relationship of attorneys and client, the Court makes no adjudication in that connection. Those parties are all *sui juris,* in so far as this record reflects,

---

12. Mr. Prebish agreed to accept $7,000 from Mrs. Nanney in compromise of the uncontingent portion of the fees due. Messrs. Kelner and Prebish both testified that this sum was accepted by Mr. Prebish as " * * * his portion of the fee for representing Mrs. Nanney. * * * "

and the Court will leave them as found. The instant adjudication the Court does make is confined to the issue of whether the remaining fund herein deposited in the registry of this Court should be impressed with a lien for attorneys' fees of Kelner and Lewis.

The Court finds and concludes that, while under exclusive authority from Mrs. Nanney to take all legal steps necessary to enforce her claims under the plaintiff's and another insuror's policies, wherein she was the named beneficiary and her children were the secondary beneficiaries, Kelner and Lewis and Mr. Prebish did not faithfully, honestly, and consistently represent her interests and protect her rights, did not discharge their duties to her with the strictest fidelity, and did not observe the highest and utmost good faith toward her. The intervening complaint of the intervening defendants Kelner and Lewis of August 29, seeking a declaration of a lien upon the fund herein in the registry for their services to her as attorneys hereby is

Denied.

Counsel will submit an approved agreed order for distribution of the fund reserved in 5(a) of the Court's order of August 26.