IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 24, 2013 Session


HOLLY CASTLE, INDIVIDUALLY, AND AS NEXT FRIEND OF EMILY CASTLE, A
MINOR CHILD; AND JANA CLARK v.
DAVID DORRIS LOGGING, INC., ET AL.


Direct Appeal from the Circuit Court for Shelby County
No. CT-001806-07, Div. IV    Gina C. Higgins, Judge

_____

No. W2012-00917-COA-R3-CV - Filed February 11, 2013

_____


This case involves a post-trial dispute between one party to a personal injury case and their former counsel. After a jury verdict was entered in favor of Appellants, their former law firm filed an attorney lien and a motion to recover its attorney fees in the trial court. Appellants asserted that the trial court lacked jurisdiction to consider the former firm's motion. The trial court disagreed and awarded the former firm its full requested fee. Appellants appeal both the award of attorney fees to its former law firm, and also the trial court's denial of Appellants' request to release funds held by the clerk. We conclude that the trial court lacked jurisdiction to consider the post-trial dispute and reverse the award of attorneys fees in this case. However, we affirm the trial court's denial of the motion to release funds. Reversed in part, affirmed in part, and remanded.


**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed in
Part, Affirmed in Part and Remanded**


J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, J., joined.

R. Sadler Bailey, Memphis, Tennessee, for the appellants, Holly Castle and Jana Clark.

Martin Zummach, Southhaven, Mississippi, for the appellee, Horne & Wells, PLLC.


**OPINION**


**I. Background**

Plaintiffs/Appellants Holly Castle, Emily Castle, and Jana Clark (collectively, "Appellants") were involved in a car accident with Defendants David Dorris Logging, Inc., and David Dorris, (collectively, "Defendants") on May 9, 2006. The Defendants stipulated to liability and a jury returned a verdict for the Appellants in the total amount of $350,000.00. Shortly after the jury verdict, Appellants fired their law firm, Appellee Horne and Wells, PLLC ("Horne and Wells"). The jury verdict was reduced to judgment on October 25, 2011. On October, 26, 2011, Appellants' new attorney entered a notice of appearance in the case. On the same day, Horne and Wells filed a notice of attorney lien on the jury verdict. Before hiring Horne and Wells, Appellants had previously fired attorney Ronald Krelstein in 2008. Mr. Krelstein also filed a notice of attorney lien in this case. Mr. Krelstein later filed a separate action to recover his attorney fees with regard to this litigation.[1]

On November 18, 2011, new counsel for the Appellants filed a Motion for New Trial, or, in the alternative, for Additur, arguing that the jury's verdict was against the weight of the evidence introduced at trial. On November 22, 2011, Defendants entered into a consent order, awarding Appellants their discretionary costs. On December 12, 2011, Defendants filed a response to Appellants' Motion for New Trial, denying that the jury's verdict was against the weight of the evidence. On December 30, 2011, counsel for Horne and Wells notified the Appellants' newly retained counsel that it intended to file a motion to recover attorney fees and costs. According to the briefs, the matter was set for hearing, but was later removed from the docket when Appellants' counsel informed Horne and Wells that he believed seeking attorney fees in such a manner was improper pursuant to *Starks v. Browning*, 20 S.W.3d 645 (Tenn. Ct. App. 1999), discussed in detail below.

On January 3, 2012, the trial court denied Appellants' Motion for New Trial, or, in the alternative, for Additur. On the same day, the trial court entered a Consent Order, under which the full amount of damages awarded to the Appellants would be paid to the Shelby County Circuit Court Clerk pending resolution of all claims for damages, whether claimed by the Appellants' former counsel or others. The order notes that both Horne and Wells and Mr. Krelstein had filed attorney liens regarding the funds paid into the Court Clerk. The order also refers to other claims on the funds, concerning loans entered into by Appellants, which are not the subject of this appeal.[2] The order states:

_____

[1] Mr. Krelstein filed a brief in this matter fully agreeing with Horne and Wells' position in this case. However, Mr. Krelstein was never made a party to this case in the trial court or on appeal pursuant to Tennessee Rules of Civil Procedure 19(e) (allowing for the addition of parties upon motion by the parties or the Court). Thus, Mr. Krelstein is not a party to this appeal.

[2] The loans entered into by Appellants are not at issue on appeal. According to counsel for Appellants at oral argument, those loans have now been satisfied. The record contains a consent order

(continued...)

> IT IS, THEREFORE, ORDERED, ADJUDGED, AND
> DECREED that all funds necessary for the Defendants to satisfy
> the Judgments ($200,000.00 for Holly Castle and $150,000.00
> for Jana Clark plus post-judgement interest) will be paid into an
> interest-bearing account, until the disputes between and among
> the various parties making claim to the Judgment proceeds are
> resolved and further Orders of this Court are entered directing
> distribution of the funds.

The order was signed by counsel for Appellants, Defendants, Horne and Wells, and Mr. Krelstein. The Defendants paid the owed amounts into the registry of the Circuit Court Clerk and a Satisfaction of Judgment was entered on January 11, 2012.[3]

On January 20, 2012, Horne and Wells filed its Motion to Recover Attorneys Fees and Costs. Horne and Wells attached its contract for legal services with the Appellants to the motion, which contract indicates that Horne and Wells was to receive forty percent of the total recovery if the case went to trial. Appellants filed a response in opposition on January 25, 2012, arguing that the motion was improper and that the trial court did not have jurisdiction to consider a dispute between one party to a lawsuit and its own attorney.

On January 27, 2012, the trial court orally ruled that it had jurisdiction to hear the dispute between Appellants and Horne and Wells regarding the attorney fee dispute. The trial court further directed Horne and Wells to provide documentation showing the amount of time spent working on the case in order to award Horne and Wells a reasonable attorney fee. On February 1, 2012, Horne and Wells filed several affidavits concerning its work on the case, as well as the affidavits of other attorneys concerning the reasonableness of the requested fee.

On February 7, 2012, counsel for the Appellants informed the trial court that he intended to file motions soon, but that a hearing on the motion for attorneys fees had not yet been set. The trial court informed counsel for the Appellants that it intended to file an order ruling on the attorney fee motion the following day. Accordingly, Appellants filed a Motion for Recusal, a Motion to Release Funds, and a Motion for Interlocutory Appeal on February 7, 2012. On February 8, 2012, the trial court entered an order granting Horne and Wells' an

---

[2](...continued)
entered by the parties disbursing $44,262.50 to Harwood Investment Group, LLC, on January 3, 2012.

[3] After the Defendants paid the jury verdict into the Circuit Court Clerk, the Defendants no longer participated in this litigation and are not a party to this appeal.

award for attorney fees in the amount of $144,115.45. The trial court specifically relied on the consent order providing that funds would only be disbursed upon order of the trial court to conclude that it had jurisdiction over the dispute. The trial court then directed Horne and Wells to provide some documentation "that no other claims are made in objection to the attorney fees alleged by Horne and Wells [], to be due and owing in the amount of $144,115.45, other than those objections already presented by [Appellants] in response to the original motion." Horne and Wells complied by filing a "Statement of Interest" from both Mr. Krelstein and attorneys for the Defendants, in which they stated that they claimed no interest in and did not dispute Horne and Wells' $144,115.45 attorney fee award.

On February 16, 2012, Horne and Wells filed a response to the Appellants' pending motions. On February 24, 2012, a hearing was held on all pending motions. The trial court orally denied the motion to recuse and the motion to release funds. The trial court ordered additional briefing on the issue of whether a jury trial was required to award attorney fees. Ultimately, the trial court entered an order on March 20, 2012 denying Appellants' recusal motion, motion to release funds, and request for jury trial. The trial court entered another order on March 21, 2012 awarding Horne and Wells its full requested attorney fees. Appellants timely appealed.[4]

## II. Issues Presented

1.  Whether the trial court erred in retaining jurisdiction over Horne and Wells' Motion to Recover and Receive Attorney Fees pursuant to *Starks v. Browning*, 20 S.W.3d 645 (Tenn. Ct. App. 1999) and then subsequently granting Horne and Wells' motion?
2.  Whether the trial court erred in denying Appellants' motion for jury trial?
3.  Whether the trial court erred in denying Appellants' motion for release of funds?
4.  Whether the trial court erred in denying Appellants' motion for recusal?

## III. Analysis

### A. Subject Matter Jurisdiction

Appellants' first argue that the trial court erred in retaining jurisdiction over the fee

---

[4] We note that nothing in the record suggests that the trial court ever entered an order denying Appellants' Motion for Interlocutory Appeal. However, after the trial court entered the orders on March 20 & 21, 2012, no issues remained pending in the trial court. Thus, the trial court's ruling was final and appealable, and the issue of an interlocutory appeal became moot. Accordingly, we conclude that, despite the trial court's failure to enter an order on that motion, this Court has jurisdiction to consider this appeal. *See* Tenn. R. App. 13.

dispute between Appellants and Horne and Wells based on Horne and Wells' attorney lien. Subject matter jurisdiction implicates a court's power to adjudicate a particular case or controversy. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *Earls v. Mendoza*, No. W2010-01878-COA-R3-CV, 2011 WL 3481007, at *5 (Tenn. Ct. App. Aug. 10, 2011). "In the absence of subject-matter jurisdiction, a court cannot enter a valid, enforceable order." *Earls*, 2011 WL 3481007, at *5 (citing *Brown v. Brown*, 281 S.W.2d 492, 497 (Tenn. 1955)). When subject matter jurisdiction is questioned, we must ascertain whether the Tennessee Constitution, the Tennessee General Assembly, or the common law have conferred upon the court the power to adjudicate the case before it. *Id.* (citing *Staats v. McKinnon*, 206 S.W.3d 532, 542 (Tenn. Ct. App. 2006)). "Since a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is *de novo*, without a presumption of correctness." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

Attorney liens are governed by Tennessee Code Annotated Section 23-2-102, which provides that: "Attorneys and solicitors of record who begin a suit shall have a lien upon the plaintiff's or complainant's right of action from the date of the filing of the suit." This lien attaches to any proceeds flowing from a judgment, as long as the lawyer worked to secure the judgment for the client. *See Butler v. GMAC*, 203 Tenn. 366, 370–71, 313 S.W.2d, 260, 262 (Tenn. 1958).

This Court explained the purpose and historical background of attorney liens in *Starks v. Browning*, 20 S.W.3d 645 (Tenn. Ct. App. 1999):

> The relationship between a client and an attorney is essentially contractual. *See Alexander v. Inman*, 974 S.W.2d 689, 694 (Tenn. 1998); *In re Ellis*, 822 S.W.2d 602, 607 (Tenn. Ct. App. 1991). In its most basic terms, this contract involves the exchange of competent legal services in return for an agreement to pay a reasonable fee. The attorney is obligated to exercise the utmost good faith in the discharge of his or her duties to represent the client. *See Crawford v. Logan*, 656 S.W.2d 360, 364 (Tenn. 1983); *Fitch v. Midland Bank & Trust Co.*, 737 S.W.2d 785, 789 (Tenn. Ct. App. 1987). If the attorney discharges his or her duties appropriately, he or she is entitled to the reasonable, agreed-upon compensation without regard to the actual benefit the services might have been to the client. *See Spofford v. Rose*, 145 Tenn. 583, 611, 237 S.W. 68, 76 (1922); *Bills v. Polk*, 72 Tenn. 494, 496 (1880); Adams v. Mellen, 618 S.W.2d 485, 488 (Tenn. Ct. App. 1981).

The courts may decline to enforce an attorney's fee contract only (1) when the attorney did not negotiate the contract in good faith, see ***Alexander v. Inman***, 974 S.W.2d at 693–94, (2) when the contract provides for an unreasonable fee, *see **White v. McBride***, 937 S.W.2d 796, 800–01 (Tenn. 1996), or (3) when the attorney has otherwise breached his or her fiduciary obligations to the client and this breach has prejudiced the client's interests. *See **Crawford v. Logan***, 656 S.W.2d at 365; ***Alexander v. Inman***, 903 S.W.2d 686, 694 (Tenn. Ct. App. 1995); ***Coleman v. Moody***, 52 Tenn.App. 138, 155, 372 S.W.2d 306, 311–314 (1963).

Two types of attorney's liens exist today either by the common law or by statute. The first type of lien is a retaining lien. A retaining lien is a possessory lien, *see **Andrew Hall & Assocs. v. Ghanem***, 679 So.2d 60, 61 (Fla. Dist. Ct. App. 1996); ***In re Coronet Ins. Co.***, 298 Ill.App.3d 411, 232 Ill.Dec. 507, 698 N.E.2d 598, 601 (1998); ***Panarello v. Panarello***, 245 N.J.Super. 318, 585 A.2d 428, 430 (Ch. Div. 1990), that permits a lawyer to retain a client's books, papers, securities, or money coming into his or her possession during the course of the representation until the attorney and client have settled their fee dispute or until the client has otherwise posted appropriate security for the outstanding fee. *See **McDonald, Shea & Co. v. Charleston, C. & C. Railroad***, 93 Tenn. 281, 293, 24 S.W. 252, 255–56 (1893); ***Brown & Reid v. Bigley***, 3 Tenn. Ch. (Cooper) 618, 621 (1878); ***Hunt v. McClanahan***, 48 Tenn. (1 Heisk.) 503, 506–07 (1870) . . . .

The second type of lien, a charging lien, is based on a lawyer's equitable right to have the fees and costs due for the lawyer's services in a particular action secured by the judgment or recovery in that action. *See **Southern v. Beeler***, 183 Tenn. 272, 301–02, 195 S.W.2d 857, 870 (1946); ***Keith v. Fitzhugh***, 83 Tenn. 49, 50 (1885); *see also **Bennett v. Weitz***, 220 Mich.App. 295, 559 N.W.2d 354, 355 (1997); ***Mack v. Moore***, 107 N.C.App. 87, 418 S.E.2d 685, 688 (1992); ***Shaffer v. Charleston Area Med. Ctr., Inc.***, 199 W.Va. 428, 485 S.E.2d 12, 20–21 (1997). Unlike a retaining lien, a charging lien is not limited to the property in the attorney's possession. *See **Brauer**

*v. Hotel Assocs., Inc.*, 192 A.2d at 834. It attaches to any proceeds flowing from a judgment, as long as the lawyer worked to secure that judgment for the client. *See Butler v. GMAC*, 203 Tenn. 366, 370–71, 313 S.W.2d 260, 262 (1958); *see also Crolley v. O'Hare Int'l Bank*, 346 N.W.2d 156, 159 (Minn.1984).

Both retaining and charging lien rights may be waived or forfeited in a variety of ways. They may be lost if a lawyer fails to represent his or her client's interests faithfully, honestly, and consistently or fails to discharge his or her duties with the utmost faith. *See First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626, 633 (2d Cir.1972); *Western Life Ins. Co. v. Nanney*, 296 F.Supp. 432, 441 (E.D. Tenn. 1969); *People ex rel. MacFarlane v. Harthun*, 195 Colo. 38, 581 P.2d 716, 718 (1978). Accordingly, a client may assert an affirmative defense or counterclaim based on professional negligence in response to a lawyer's action to enforce a charging lien. *See Paramount Eng'g Group, Inc. v. Oakland Lakes, Ltd.*, 685 So.2d 11, 12 (Fla.Dist.Ct.App.1996); *Jarman v. Hale*, 112 Idaho 270, 731 P.2d 813, 814 (App. 1986); *Coughlin v. SeRine*, 154 Ill.App.3d 510, 107 Ill.Dec. 592, 507 N.E.2d 505, 508 (1987); *Neylan v. Moser*, 400 N.W.2d 538, 540 (Iowa 1987).

*Starks*, 20 S.W.3d at 650–51.

Appellants do not dispute that Horne and Wells filed a proper attorney charging lien in this case. Instead, they argue that the trial court lacked subject matter jurisdiction to consider a dispute between a party and its own attorneys based on the specific circumstances in this case. Both parties agree that the case of *Starks v. Browning*, 20 S.W.3d 645 (Tenn. Ct. App. 1999), is directly on point and is controlling in this case. However, each party argues that application of *Starks* supports its position. Therefore, we first turn to consider the facts in *Starks*.

In *Starks*, the plaintiff and the defendant entered into a post-trial settlement agreement for substantially less than the jury verdict awarded to the plaintiff. The plaintiff asserted that her attorneys were negligent in inducing her to accept the settlement. Accordingly, plaintiff's original attorneys moved to withdraw and to assert an attorney lien on the settlement. Plaintiff retained new counsel, who indicated that he would be willing to pay the disputed amount into an escrow account. From our review of the opinion, there is no indication in the

opinion whether the new attorney ever deposited the funds into an escrow account. Instead, the trial court entered an order directing the new attorney to pay the fees and expenses allegedly owed to the original attorneys to the Circuit Court Clerk. The new attorney complied and deposited the funds with the Circuit Court Clerk. A malpractice action against the original attorneys was later filed in another court. After a hearing, the trial court in the underlying action eventually awarded the original attorneys their full fee pursuant to the client's contract. The plaintiff appealed, arguing that "the mere establishment of the lien does not amount to an adjudication of the rights between her and [her original attorneys]." The Court of Appeals agreed, stating:

> While a charging lien serves to secure an attorney's fees, it does not function as an adjudication of the rights between the lawyer and his or her client. *See Pierce v. Lawrence*, 84 Tenn. 572, 577–78, 1 S.W. 204, 205–06 (1886). A trial court may declare the existence of an attorney's lien in the suit out of which the dispute regarding the attorney's fee arose, but ordinarily an attorney, not being a party to the proceeding, may not obtain a judgment with respect to his or her fee in that action. *See State v. Edgefield & Kentucky R.R.*, 63 Tenn. 92, 97 (1874); *Perkins v. Perkins*, 56 Tenn. (9 Heisk.) 95, 97–98 (1871). Once the court declares the existence of the attorney's lien in the underlying litigation, the lien becomes an equitable charge on any recovery the client receives in the litigation.

> After a court has declared an attorney's lien, the lawyer may then commence a separate proceeding in a court of competent jurisdiction to enforce his or her contractual right to a fee. *See Keith v. Fitzhugh*, 83 Tenn. 49, 50 (1885); *McCamy v. Key*, 71 Tenn. 247, 250–51 (1879); *Brown & Reid v. Bigley*, 3 Tenn. Ch. at 626; *Fain v. Inman*, 53 Tenn. (6 Heisk.) 5, 12 (1871). In this separate suit, the issues relating to the attorney's entitlement to the fee and costs secured by the lien and to the attorney's professional negligence may be litigated. *See Perkins v. Perkins*, 56 Tenn. at 97–98; *Palmer v. Palmer*, 562 S.W.2d 833, 839 (Tenn. Ct. App. 1977); *Manson v. Stacker*, 36 S.W. 188, 190–91 (Tenn. Ch. App. 1896); *Brown & Reid v. Bigley*, 3 Tenn. Ch. at 626. This separate proceeding offers the client, now in the posture of a defendant, an opportunity to present defenses to the attorney's claim for a fee, including defenses that the attorney is not entitled to a fee because of professional

negligence or some other basis. *See First Nat'l Bank of Cincinnati v. Pepper*, 454 F.2d 626 at 633; *Western Life Ins. Co. v. Nanney*, 296 F.Supp. at 441.

*Starks*, 20 S.W.3d at 652–53 (footnote omitted). Thus, the Appellants argue that the trial court in this case likewise erred in adjudicating the rights between Appellants and Horne and Wells.

Horne and Wells, however, argues that the trial court properly awarded its fee because the case-at-bar falls within the exception to the general rule expressed in *Starks*. Indeed, the Court in *Starks* did note one exception to the general rule that a fee dispute must be commenced in a separate lawsuit:

> This exception applies to cases in which the money or property upon which the lien is to be enforced comes within the control of the court in the case in which the services were rendered. When the court is able to exert jurisdiction directly over the funds or property, the attorney need not resort to a separate suit to enforce his or her lien.

*Id.* at 653 (citing *State v. Edgefield & Kentucky R.R.*, 63 Tenn. at 97; *Palmer v. Palmer*, 562 S.W.2d at 839).

Horne and Wells argues that, because the parties agreed to pay the damages into the registry of the Circuit Court Clerk, the money "c[a]me within the control of the court in which the services were rendered." *Starks*, 20 S.W.3d at 653. Thus, Horne and Wells asserts that, by obtaining control over the funds at issue through the agreement of the parties, "the court [was] able to exert jurisdiction over the funds or property." *Id.* To support this argument, Horne and Wells rely on the Tennessee Supreme Court case of *Schmitt v. Smith*, 118 S.W.3d 348 (Tenn. 2003). The Court in *Schmitt* applied the exception in *Starks* to hold that the trial court had jurisdiction to consider the fee dispute between a client and her/his attorney regarding a divorce action. The *Schmitt* Court noted that the *Starks* Court refused to apply the exception in that case because "the lien involved a post-judgment dispute between the attorneys and the client over legal fees and expenses." However, the Court concluded that the present case was different:

> We have here a divorce action in which the trial court adjudicated the distribution of the marital property owned by [husband and wife]. The residence that was the subject of [the attorney] lien was included in the marital property ultimately

divided by the trial court. As such, the property upon which the lien was to be enforced, the house, was within the control of the trial court. . . . Therefore, we hold that the trial court properly adjudicated the attorney's lien in this case.

*Id.* at 354. The Court further held that the trial court retained jurisdiction over the property despite the entry of a final judgment on the divorce because, at the time the lien was filed, a petition was pending in the trial court to force the sale of the property at issue. Therefore, "the subject of the lien was still within the jurisdiction of the trial court." *Id.* at 355.

In contrast, Appellants argue that the facts presented in this case do not fall within the "narrow" exception outlined in *Starks* and applied in *Schmitt*. *See Starks*, 20 S.W.3d at 653. As argued by Appellants, in *Starks*, as in the instant appeal, the funds at issue were the result of personal injury lawsuit. The Court of Appeals concluded that the trial court correctly granted the lien in favor of the original attorneys, but that the trial court erred in awarding the attorneys the fees that were in dispute. The Court explained:

The facts of this case do not fall within the narrow confines of the exception to the general requirement that a lawyer must file a separate suit against his or her client to collect a disputed fee. The October 7, 1997 order directing [plaintiff] to pay $51,091.99 into court was not part of the underlying litigation between [plaintiff] and [the original defendants] and was entered after that litigation had been concluded. Rather, the order was part of the post-judgment dispute between the [original attorneys] and [plaintiff] over legal fees and expenses. Accordingly, because the settlement proceeds were never brought under the control of the trial court *during the underlying litigation*, the [original attorneys] should have filed a separate action against [plaintiff] for its fee rather than attempting to obtain it in this case.

*Starks*, 20 S.W.3d at 653. Appellants argue that the situation presented in this case is highly analogous to the facts in *Starks*, and thus, this Court must likewise conclude that the trial court lacked jurisdiction. Appellants point out that, as in *Starks*, the trial court here did not gain control over the funds "during the underlying litigation," but only during the post-judgment dispute regarding the attorney fees in this case. Appellants further distinguish the facts in this case from the case relied on by Horne and Wells, *Schmitt v. Smith*. According to Appellants, the *Schmitt* trial court retained jurisdiction to award the original attorneys their fee only because the property upon which the lien was based, a piece of real property jointly

-10-

owned by the parties, came within the control of the court in the underlying litigation. Indeed, Tennessee Code Annotated Section 36-4-121 authorizes courts with divorce jurisdiction, upon request of either party in a divorce action, to equitably divide or distribute the marital property. Thus, a trial court having jurisdiction over a divorce also has jurisdiction over the property at issue in the divorce during the underlying litigation. In contrast, Appellants argue that the funds at issue, like the funds in *Starks*, were not subject to the control of the trial court during the underlying litigation; instead, they assert that the consent order placing the funds with the court "was entered after that litigation had been concluded[, and that ] . . . the order was part of the post-judgment dispute between [Horne and Wells] and [Appellants] over legal fees and expenses." *Starks*, 20 S.W.3d at 653.

We agree. A judgment on the jury verdict was entered on October 25, 2011. A Motion for New Trial was denied on January 3, 2012. The funds at issue did not come within control of the Court until the Motion for New Trial was denied on January 3, 2012 pursuant to the consent order signed by the parties. Despite arguments to the contrary, this case simply does not fall within the "narrow" exception expressed in *Starks* because the funds at issue were not within the trial court's control during the underlying litigation. Indeed, during the underlying litigation there were no funds at issue because the Defendants had not yet been ordered to pay damages to the Appellants until the order on the jury verdict was entered. In contrast in *Schmitt*, the property at issue was within the trial court's jurisdiction from the inception of the underlying litigation because it constituted marital property subject to equitable division pursuant to Tennessee Code Annotated Section 36-4-121. Thus, in this case, the funds at issue were not within the control of the trial court "during the underlying litigation," and the trial court therefore, had no jurisdiction to award Horne and Wells its alleged fee in this case.

Horne and Wells argues, however, that the facts in *Starks* are distinguishable because the plaintiff in *Starks* never agreed to submit the settlement proceeds to the court pending resolution of the disputes. In this case the damages represent a jury verdict, the entirety of which was paid directly to the Circuit Court Clerk by the original Defendants. In contrast, in *Starks*, the funds represented a settlement that was forwarded to the plaintiff's new attorney, who agreed to pay the disputed funds into an escrow account and was later ordered by the court to pay only the amount allegedly owed to the original attorneys to the Circuit Court Clerk. In short, Horne and Wells argues that the jurisdiction of the trial court over the dispute at issue rests upon the consent order allowing the funds to be paid into the court and held until all disputes were resolved. Indeed, in its brief, Horne and Wells asserts that "perhaps most damaging to the [Appellants'] position to the contrary, [Appellants] expressly consented to the court's continued jurisdiction over the funds in that Consent Order[.]" Defendants in this case were clearly entitled to deposit the amount representing the jury verdict with the Circuit Court Clerk pursuant to Rule 67.01 of the Tennessee Rules of Civil

Procedure. Rule 67.01 provides:

> In an action in which any part of the relief sought is a judgment
> for a sum of money or the disposition of a sum of money or the
> disposition of any other thing capable of delivery, a party upon
> notice to every other party and by leave of court may deposit
> with the court all or any part of such sum or thing.

Therefore, the trial court clearly had jurisdiction pursuant to Rule 67.01 to allow Defendants to deposit the funds at issue with the Circuit Court Clerk pending resolution of all pending disputes. Although the deposit of the funds was clearly authorized by the above rule, nothing in Rule 67.01 confers jurisdiction on the trial court to consider a post-trial dispute between one party and its own attorney. Horne and Wells cites no cases in which the simple act of taking advantage of the procedure available in Rule 67.01 was found to have conferred jurisdiction on the trial court to resolve a post-trial dispute between one party and its own attorney. Our research has likewise failed to reveal such a case. Nor does the fact that the parties agreed that the funds should remain in the court pending resolution of all disputes and "further [o]rders of the Court" confer jurisdiction on the trial court in this case. Indeed, it is well-settled that the court does not gain jurisdiction through the consent of the parties. "'Subject matter jurisdiction differs fundamentally from personal jurisdiction in that the latter can be conferred by express or implied consent,' while ***subject-matter jurisdiction cannot be conferred* '*by appearance, plea, consent, silence, or waiver*.'" *Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994) (emphasis added). Thus, despite the parties' apparent consent to allow the trial court to hold the funds pending resolution of the dispute, the consent order did not operate to confer jurisdiction on the trial court to consider the fee dispute between the Appellants and Horne and Wells.

This decision does not leave Horne and Wells without a remedy to recover its alleged attorney fee. As explained in *Starks*:

> Holding that the trial court should not have entertained
> the claim for legal fees and costs in the litigation between
> [plaintiff] and [the defendants] will not deprive [the original
> attorneys] of its opportunity to adjudicate its right to recover its
> fees and expenses. [Plaintiff's] pending malpractice action
> provides the [original attorneys] with an avenue to counterclaim
> for the unpaid attorney's fees and costs. If [plaintiff] does not
> prevail with her malpractice claim and if the [the original
> attorneys] can establish that it is entitled to the claimed
> attorney's fees and costs, then the trial court in that case will be

-12-

able to enter a judgment accordingly.

*Starks*, 20 S.W.3d at 653. Indeed, it appears in this case that the Appellants have likewise filed a legal malpractice action against Horne and Wells in another division of Shelby County Circuit Court. Thus, Horne and Wells has a proper and convenient forum in which to bring its action to recover attorney fees.

Based on the foregoing, we conclude that the trial court lacked subject matter jurisdiction to award Horne and Wells its alleged attorney fee in this case. As such, the order awarding Horne and Wells $144,115.45 in attorney fees is reversed and this cause is remanded to the trial court for dismissal of Horne and Wells' Motion to Recover Attorney Fees. Although Appellants raise additional arguments regarding recusal of the trial judge and the trial judge's denial of jury trial in this case, Appellants indicated, both at oral argument and in their brief, that such issues would be moot should this Court conclude that the trial court lacked subject matter jurisdiction to award Horne and Wells its attorney fees. Accordingly, the issues of the denial of both the jury trial and recusal motions are pretermitted.

### B. Motion to Release Funds

Appellants next argue that the trial court erred in denying its motion to release funds when at least some portion of the funds held by the court clerk is not in dispute. At this time, however, both Horne and Wells and Mr. Krelstein have pending attorney liens on the funds, which have yet to be adjudicated by a court of competent jurisdiction. Accordingly, the amount owed to both of the Appellants' former law firms remains in dispute. The Consent Order in this case clearly states that the funds will remain with the Circuit Court Clerk "until the disputes between and among the various parties making claim to the Judgement proceeds are resolved." As such, this Court is reluctant to release funds for which the parties have clearly agreed to remain with the Circuit Court Clerk pending resolution of the fee dispute between Appellants and their former law firm. Therefore, the order denying Appellants' Motion to Release Funds is affirmed. We note, however, that Horne and Wells, with the full concurrence of Mr. Krelstein, acquiesced in its brief to the release of those funds that did not represent any of Horne and Wells' alleged fee and accrued interest. Thus, Horne and Wells has conceded that a portion of the funds being held by the clerk is properly released to the Appellants in this case. Horne and Wells, however, failed to assign a numerical value to the amount of the funds that it did not dispute. Unfortunately, the disposition of this case reversing the judgment of the trial court and directing Horne and Wells to file its suit in another court leaves considerable remaining issues to be decided regarding the funds at issue. Because Horne and Wells has conceded that at least a portion of the funds at issue are subject to no dispute, we encourage the parties to come to a mutually satisfactory resolution of this

-13-

issue on remand as soon as possible.

## IV. Conclusion

The judgment of the Shelby County Circuit Court is reversed in part and affirmed in part. This cause is remanded for dismissal of Appellee Horne and Wells, PLLC's Motion to Recover Attorney Fees and for all further proceedings as may be necessary and consistent with this opinion. Costs of this appeal are taxed one-half to Appellants, Holly Castle, Emily Castle, and Jana Clark, and their surety, and one-half to Appellees, Horne and Wells, PLLC, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE